**Billy Doyle MEDFORD, Appellant,**

v.

**The STATE of Texas.**

**No. 521–99.**

Court of Criminal Appeals of Texas.

Feb. 23, 2000.

---

Erik A. Bovik, Austin, for appellant.

Jeffrey L. Van Horn, Asst. State Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

MANSFIELD, J., delivered the opinion of the Court, in which McCORMICK, P.J., MEYERS, PRICE, HOLLAND, WOMACK, JOHNSON, and KEASLER, J.J., joined.

For this Court's consideration, two questions have been presented by the State

Prosecuting Attorney (SPA) in this matter. First, in determining whether an individual is guilty of the offense of escape, is the jury authorized to employ any meaning of the term "arrest" that is acceptable in common parlance? Second, when reviewing the sufficiency of the evidence to sustain a conviction for escape, should the reviewing court employ the definition of "arrest" found in Article 15.22 of the Texas Code of Criminal Procedure? The answer to both questions is "no." The judgment of the Court of Appeals is vacated and remanded.

On or about March 31, 1997, Officer Beau Price of the Lockhart Police Department was searching for the subject of an issued arrest warrant. Officer Price observed appellant, determined he matched the description provided in the warrant, and approached him to conduct an investigatory detention. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). During a subsequent search of appellant's pants pocket, Officer Price discovered a matchbox containing what he believed to be "crack" cocaine. Officer Price informed appellant he was under arrest and asked him to place his hands behind his back. As the officer grasped appellant's left arm in order to place it in handcuffs, appellant broke free of the officer's grip and fled. He was ultimately captured, indicted, and tried for both possession of cocaine and escape. See Tex. Health & Safety Code § 481.112; Tex. Pen.Code § 38.06.

On October, 28, 1997, a jury found appellant guilty on both counts. Five prior felony convictions enhanced appellant's punishment. The conviction for possession of cocaine yielded a term of twenty years imprisonment, and the conviction for escape yielded a term of life imprisonment. The trial court ordered that the sentences run concurrently.

The Third Court of Appeals affirmed appellant's cocaine conviction but reversed his escape conviction on the ground the evidence was legally insufficient to support the jury's determination that appellant escaped while he was under arrest. *Medford v. State*, 990 S.W.2d 799 (Tex.App.—Austin 1999). The unanimous opinion held that the evidence, even viewed in a light most favorable to the prosecution, showed "that Officer Price never succeeded in securing custody and control of appellant, [and] the State did not satisfy its burden of proving [a completed arrest]." Therefore, because he was not under arrest, appellant could not have "escaped" within the meaning of Texas Penal Code, § 38.06. The Court of Appeals made this determination, in part, by relying upon the only legislatively generated definition of "arrest" to be found in this state's criminal jurisprudence, Article 15.22 of the Texas Code of Criminal Procedure.[1]

We granted the SPA's two grounds for review presented in his petition for discretionary review. See Tex.R.App. Proc. 66.3. As noted, this Court is asked to determine whether a jury, when it decides whether an individual is guilty of the offense of escape, is authorized "to employ any meaning of the term 'arrest' that is acceptable in common parlance." The second ground asks whether an appellate court reviewing the sufficiency of the evidence to sustain a conviction for escape should employ the definition of arrest found at Article 15.22.

The SPA avers it was error for the Court of Appeals to rely on a definition of "arrest" contained in a statute that is unrelated to the escape statute, and jurors should, instead, be free to apply their own definition of arrest. We cannot agree. It is true that, as the SPA states in its brief, terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any mean-

1. A person is under arrest "when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer arresting without a warrant." Art. 15.22, Tex.Code Crim. Proc.

ing which is acceptable in common parlance. *Vernon v. State,* 841 S.W.2d 407, 409 (Tex.Crim.App.1992) (determining what the term "penetration" means in the context of an aggravated sexual assault). See also *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). There are exceptions, however. The fact that the Legislature did not incorporate a specific definition of "arrest" into the Penal Code does not authorize jurors "to employ any [acceptable] meaning of the term," as the SPA contends. The canons of construction dictate that words and phrases possessing a technical meaning are generally to be considered as having been used in their technical sense. 82 C.J.S. *Statutes* § 330 (1953). This applies to those terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning. *Ibid.* "Arrest" is a technical term possessing a long, established history in the common law, and it would be inappropriate if jurors arbitrarily applied their personal definitions of arrest. Justice would be better served, and more consistently applied, if jurors were provided a precise, uniform definition to guide their determination whether the particular circumstances at issue constituted a completed arrest.

■ It is necessary, therefore, to find an acceptable and appropriate definition of the term "arrest" in order to properly instruct a jury and to guide a reviewing court. The elements of escape, as provided in Texas Penal Code § 38.06, are that a person (1) escape (2) from custody (3) after having been arrested for, charged with, or convicted of an offense. *Henderson v. State,* 600 S.W.2d 788, 789 (Tex.Crim.App. 1979). As a prefatory matter concerning the escape statute, lawmakers included definitions for the terms "escape" and

"custody," [2] but nowhere is the term "arrest" defined in the Penal Code. In fact, as mentioned, a definition of "arrest" can be found only in Article 15.22 of the Code of Criminal Procedure, and as the Court of Appeals noted, it does not take long to discover there is a frustrating circularity in the definitions of "arrest" in Article 15.22 and "custody" in § 38.01 of the Texas Penal Code. Succinctly stated, custody is defined as being "under arrest," and arrest is defined as being "taken into custody." *Medford v. State,* 990 S.W.2d at 806. The obvious conclusion we draw is that neither jurors nor reviewing courts can rely solely on Article 15.22's definition of arrest as it could be applied in the context of the escape statute. However, as the Court of Appeals in this case recognized, those cases explicating the scope and breadth of Article 15.22 provide insight that guides us in determining when an arrest has taken place for purposes of a suspect's alleged escape. See *White v. State,* 601 S.W.2d 364 (Tex.Crim.App. 1980). While we are not obligated to adhere to the definition of arrest provided in Article 15.22, there exists no reason why we cannot look to it and its accompanying case law for guidance to generate an appropriate definition of arrest as used in the context of the escape statute.

■ The SPA's position is that an arrest is effectuated once a law enforcement officer embraces an intent to arrest and conveys that intent. However, mere intent to make an arrest is insufficient. In fact, even an officer's expression of that intent is insufficient. "An arrest of a person carries with it an element of detention, custody or control of the accused. The mere fact that an officer makes the statement to an accused that he is under arrest does not complete that arrest. *There must be custody or detention and submis-*

---

**2.** "Escape" is defined in relevant part as an "unauthorized departure from custody." Tex. Pen.Code § 38.01(2).

"Custody" is defined in relevant part as "being under arrest by a peace officer or

under restraint by a public servant pursuant to an order of a court of this state or another state of the United States...." Tex. Pen. Code § 38.01(2)

*sion to such arrest."* *Smith v. State,* 153 Tex.Crim. 230, 219 S.W.2d 454, 456 (1949) (emphasis supplied). Additionally, "it is not the actual, physical taking into custody that will constitute an arrest. An arrest is complete whenever a person's liberty of movement is restricted or restrained." *Hardinge v. State,* 500 S.W.2d 870, 873 (Tex.Crim.App.1973). See also *Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App. 1991). This is not to say the restriction or restraint of a suspect can be achieved by only "actual, physical contact." *Woods v. State,* 466 S.W.2d 741, 743 (Tex.Crim.App. 1971). Texas has long embraced the axiom that, aside from the assertion of physical dominion over a suspect, it is also possible an arrest can be accomplished once a suspect has submitted to the officer's authority. See *Wyatt v. State,* 120 Tex.Crim. 3, 47 S.W.2d 827, 829 (1932) (the officer did not at any time have the suspect in custody or under his control, nor did the suspect at any time submit to an arrest); *Shannon v. Jones,* 76 Tex. 141, 13 S.W. 477 (1890) (actual contact is not necessary to constitute an arrest). Other states, too, when determining the sufficiency of the evidence to sustain a conviction for escape during an arrest, allow that arrest to be accomplished by either physical contact or submission to authority. See *People v. Thornton,* 929 P.2d 729, 733 (Colo.1996); *State v. Nakoa,* 72 Haw. 360, 817 P.2d 1060, 1063–64 (1991); *State v. Sanchez,* 145 Ariz. 313, 701 P.2d 571 (1985); *Dumaine v. State,* 103 Nev. 121, 734 P.2d 1230, 1232 (1987). *State v. Powers,* 386 A.2d 721, 727 (Maine 1978); *State v. Nicholson,* 839 S.W.2d 593, 596 (Mo. App. W.D.1992). This principle has been embraced by the United States Supreme Court as well. It has held that, in the context of search and seizure, "[a]n arrest requires *either* physical force [however brief] *or,* where that is absent, *submission* to the assertion of authority." *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) (emphasis in original). Finally, although the issue is not specifically contested in this petition,

we note that a logical reading of the escape statute and those statutes in *pari materia* (see, e.g., § 38.04 Tex. Pen.Code, Evading Arrest or Detention) indicates the legislature envisioned that an arrest be complete before an individual can be charged with escape. Statutes in *pari materia* should be construed as to give meaning to both, if this can be done, and each statute should be afforded a field of operation. 82 C.J.S. *Statutes,* § 349–352 (1999). If one could be prosecuted for escape without a completed arrest, it would negate the effectiveness of an evading arrest or detention charge.

■ We now apply the foregoing principles to the issue at hand. For purposes of the escape statute, an "arrest" is complete when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority. Furthermore, an arrest is complete only if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Corral–Franco,* 848 F.2d 536, 540 (5th Cir.1988). The latter portion of this holding modifies, but does not completely overrule, this Court's plurality opinion in *Morris v. State,* 739 S.W.2d 63 (Tex.Crim.App.1987) (the circumstances of a case must be examined in order to decide if a defendant would have reasonably believed that he was not free to leave). The *Morris* decision appropriately adopted the reasonable person standard but failed to sufficiently narrow that standard to the specific determination of when an arrest has occurred. It is necessary, then, to focus the fact finder's application of the reasonable person standard *into the context of an arrest* to prevent a conviction based upon some less intrusive type of seizure, e.g., a *Terry* stop. See LaFave, Israel, & King, *Criminal Procedure* 2nd ed., § 3.5(a) ("Because making the issue turn upon either the

subjective intent of the police officer or the subjective perception of the suspect would mean that the matter would 'be decided by a swearing contest,' courts are now inclined to use an objective test").

In light of the above, we vacate the judgment of the Court of Appeals and remand the cause for further proceedings consistent with this opinion.

KELLER, J., concurred in the result.